IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

United States District Court
Southern District of Texas
FILED

**AUG 2 1 2001**

Michael N. Milby, Clerk of Court

| | |
|---|---|
| JOEL RODRIGUEZ, INDIVIDUALLY | § |
| AND ON BEHALF OF HIS WIFE, | § |
| MARISA J. RODRIGUEZ, AND | § |
| CHILDREN OLGA MARIANA | § |
| RODRIGUEZ, JOEL | § |
| J. RODRIGUEZ AND MARISA | § |
| RODRIGUEZ, MINORS AND | § |
| JORGE RODRIGUEZ | § |
| | § CIVIL ACTION NO. M-01-165 |
| v. | § |
| | § |
| BRIDGESTONE/FIRESTONE, INC,; | § |
| WESLACO FORD-MERCURY, INC., | § |
| FORD MOTOR COMPANY | § |

## DEFENDANTS BRIDGESTONE/FIRESTONE'S MOTION FOR JUDGMENT AS A MATTER OF LAW AT THE CLOSE OF ALL THE EVIDENCE

TO THE HONORABLE JUDGE VELA:

Pursuant to Rule 50, Fed. R. Civ. P., Bridgestone/Firestone Inc. ("Firestone"), files this Motion for Judgment as a Matter of Law at the Close of All Evidence, and in support thereof, Firestone would show the Court as follows:

Trial of this case before a jury began on August 13, 2001. At the conclusion of Plaintiffs' case to the jury on August 17, 2001, but before the beginning of the presentation of Firestone's case to the jury, Firestone filed and argued its Motion for Judgment as a Matter of Law at the Close of Plaintiffs' Evidence upon which this Court entered its ruling. Firestone now files this Motion for Judgment as a Matter of Law at the Close of All the Evidence in which Firestone reurges those issues raised before the Court in its Motion for Judgment as a Matter of Law at the Close of Plaintiffs' Evidence and raises the additional complaints set forth below.



## PLAINTIFFS' CLAIMS AGAINST FIRESTONE

Plaintiffs' Complaint, filed in this Court on August 10, 2001 – and the subject of Firestone's objection (*see* Motion to Strike Plaintiffs' Complaint filed August 13, 2001) – asserts causes of action only under Texas state law. Plaintiffs allege that (1) Firestone was negligent regarding various aspects of the design, manufacture, and marketing of the tire in question, (2) the tire contained a design defect, (3) the tire contained a manufacturing defect, (4) the tire contained a marketing defect, (5) Firestone breached express and implied warranties, (6) Firestone was negligent per se for failing to comply with a purported federal law duty to recall the tire at issue, and (7) Firestone is liable for punitive damages. As discussed herein, Firestone is entitled to judgment as a matter of law on each of these claims.

## MOTION FOR JUDGMENT AS A MATTER OF LAW STANDARD

A motion for judgment as a matter of law made pursuant to Rule 50 should be granted when "there is no legally sufficient evidentiary basis for a reasonable jury to find for [a] party on [an] issue." FED. R. CIV. P. 50(a)(1). Judgment as a matter of law is appropriate (1) when there is no evidence to support the jury's findings, *i.e.*, where there is a complete absence of evidence to support the jury's findings, and (2) when the evidence is legally insufficient to support the jury's findings, *i.e.*, where "facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict." *Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5th Cir. 1969). A "mere scintilla of evidence" is insufficient to present a question for the jury; rather there must be a conflict in substantial evidence to create a jury question. *Boeing*, 411 F.2d at 374. References to "no evidence" and "no legally sufficient evidence" in this Motion are intended to encompass both the complete absence of evidence standard and the *Boeing*

CutePDF - www.texiss.com

standard.  For the reasons set forth in this Motion, Firestone is entitled to judgment in its favor as a matter of law on all claims asserted against it.

## GROUNDS FOR RELIEF

**I.      Firestone Is Entitled to Judgment as a Matter of Law on Plaintiffs' Negligence Claims.**

To recover for negligence, Plaintiffs must establish (1) the existence of a duty, (2) breach of that duty (3) proximate causation, and (4) damages.  *See Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1991).  To establish breach, Plaintiffs must show that Firestone did something that an ordinarily prudent person exercising ordinary care would not have done under the circumstances, or that it failed to do something that an ordinarily prudent person would have done under the circumstances.  *See Lincoln Prop. Co. v. DeShazo*, 4 S.W.3d 55, 61 (Tex. App. – Fort Worth 1999, pet. denied).  There is no evidence and no legally sufficient evidence that Firestone was negligent, and that such negligence proximately caused the occurrence in question.

Plaintiffs allege that Firestone engaged in the following acts of negligence:

a.      Negligently designed the subject tire;

b.      Negligently constructed the subject tire;

c.      Negligently manufactured the subject tire;

d.      Negligently tested or failed to consider the result of testing;

e.      Negligently inspected or failed to inspect the subject tire for defects;

f.      Negligently failed to heed the results of warranty claims and/or adjustment records;

g.      Negligently warned or failed to warn Plaintiffs of defects in the subject tire which Defendant Firestone either knew or should have known existed;

h.      Negligently warned or failed to warn Plaintiffs of the hazards of under inflation; and,

i.      Negligently failed to recall the tire pursuant to its obligations under federal law.

As discussed below, Firestone is entitled to judgment as a matter with respect to each of these allegations.

**A.      Firestone is entitled to judgment as a matter of law regarding Plaintiffs' claim for negligent design.**

Plaintiffs' claim for "negligent design" is functionally identical to and duplicates their claim for design defect, addressed in Part II below.  In Texas, a design defect claim -- like a negligence claim -- requires a balancing of the *foreseeable* risks and benefits of the product.  *See Hernandez v. Tokai Corp.*, 2 S.W.3d 251, 257 (Tex. 1999); RESTATEMENT (THIRD) OF TORTS:  PRODUCTS LIABILITY, § 2(b); RESTATEMENT (SECOND) OF TORTS: PRODUCTS LIABILITY § 402A.   The Restatement explains that functionally similar claims, like negligent design and design defect, should not be separately submitted to the jury:

> [T]wo or more factually identical defective-design claims . . . should not be submitted to the trier of fact in the same case under different doctrinal labels. Regardless of the doctrinal label attached to a particular claim, design . . . claims rest on a risk-utility assessment.  To allow two or more factually identical risk-utility claims to go to the jury under different labels, whether "strict liability," "negligence," or "implied warranty of merchantability," would generate confusion and may well result in inconsistent verdicts.

RESTATEMENT (THIRD) OF TORTS, § 2, cmt. n. In *Hyundai Motor Co. v. Rodriguez*, 995 S.W.2d 661, 666-67 (Tex. 1999), the Texas Supreme Court quoted the Restatement Third with approval, and held that two functionally identical defective-design claims should not be submitted under different doctrinal labels.  The Texas Legislature has also recognized the functional similarity of negligent design and design defect claims.  *See* TEX. CIV. PRAC. & REM. CODE §§ 82.001(2); 82.005.  *See also Hyundai*, 995 S.W.2d at 664 ("The requisite proof for recovery on a design defect claim was prescribed by statute in 1993 and made the same for any legal theory asserted.").

4

Because Plaintiffs' claim for negligent design is functionally the same as their design-defect claim, the claim for negligent design should not be separately submitted to the jury, and Firestone is entitled to judgment on the negligent design claim as a matter of law.

In any event, Plaintiffs have presented no evidence, or alternatively legally insufficient evidence, that the tire in issue was negligently designed or contained a design defect. *See* Part II, below. Further, Plaintiffs have presented no evidence, or alternatively legally insufficient evidence, that any alleged negligence in design or design defect was a proximate cause of Plaintiffs' alleged injuries.

**B.  Firestone is entitled to judgment as a matter of law on Plaintiffs' claims for "negligent construction" and "negligent manufacture."**

Plaintiffs' claim for "negligent manufacturing" is subsumed withing their claim asserting a manufacturing defect, which is addressed in Part III below.  While these claims are not necessarily functionally identical,[1] the Restatement nonetheless recognizes that submitting both claims creates a risk of inconsistent verdicts:  "[C]learly it would be inconsistent for a trier of fact to find no manufacturing defect on a § 2(a) claim and yet return a verdict of liability because the defendant was negligent in having poor quality control."  RESTATEMENT (THIRD) OF TORTS, § 2, cmt. n.  Because of this risk of inconsistent jury findings, Plaintiffs' claim for negligent manufacturing should not be submitted to the jury separate from Plaintiffs' claim for manufacturing defect, and thus Firestone is entitled to judgment as a matter of law on the negligent manufacturing claim.

Alternatively, there is no evidence and no legally sufficient evidence that Firestone failed to exercise reasonable care in the manufacture of the tire at issue.  Moreover, there is no evidence and

---

[1] A negligent manufacturing claim is based on fault, while a manufacturing defect claims rests merely on a showing of product defect. *See* RESTATEMENT (THIRD) OF TORTS, § 2, cmt. n.

CVisPDF - www.fenrir.com

no legally sufficient evidence, that any alleged negligent manufacturing of the tire in question was a proximate cause of Plaintiffs' alleged injuries.

Although Plaintiffs purport to assert a separate claim for "negligent construction," this allegation simply duplicates their claim for "negligent manufacture." Thus, Firestone is entitled to judgment as a matter of law on Plaintiffs' claim for "negligent construction" for the same reasons stated above. There is no evidence and no legally sufficient evidence that Firestone failed to exercise reasonable care in the construction of the tire at issue. Moreover, there is no evidence and no legally sufficient evidence, that any alleged negligent construction of the tire in question was a proximate cause of Plaintiffs' alleged injuries.

    **C.**    **Firestone is entitled to judgment as a matter of law regarding Plaintiffs' claim for "negligent testing" and "negligent inspection."**

These allegations are merely variants on Plaintiffs' claim that Firestone failed to exercise due care in the design and manufacturing processes. Accordingly, Firestone is entitled to judgment as a matter of law on these claims for the same reasons that it is entitled to judgment as a matter of law on Plaintiffs' claims for negligent design, *see* Part I.A, above, and negligent manufacture and construction. *See* Part I.B, above. In any event, there is no evidence and no legally sufficient evidence, that Firestone failed to exercise reasonable care in testing or inspecting the tire in question. Further, there is no evidence and no legally sufficient evidence that any alleged negligent testing or negligent inspection of the tire in question was a proximate cause of Plaintiffs' alleged injuries.

    **D.**    **Firestone is entitled to judgment as a matter of law regarding Plaintiffs' claim for "negligent failure to heed warranty claims or adjustment records," on Plaintiffs' claim for negligent failure to warn of alleged defects, and on Plaintiffs' claim for negligent failure to warn about hazards of under-inflation.**

Each of these allegations is based on Firestone's alleged failure to warn about foreseeable risks associated with the tire. These failure to warn/failure to heed claims, however, are functionally

identical to Plaintiffs' claim for marketing defect, which is addressed in Part IV below. *See* RESTATEMENT (THIRD) OF TORTS, § 2(c) (creating a duty to warn of the foreseeable risks of the product, where the warnings would have reduced the foreseeable risks and the failure to make the warnings renders the product not reasonably safe). The Restatement (Third) recognizes that multiple failure-to-warn claims should not be submitted to the jury, even though they bear different doctrinal labels. *See id.* at § 2, cmt. n ("[T]wo or more . . . factually identical failure-to-warn claims should not be submitted to the trier of fact in the same case under different doctrinal labels) (quoted with approval and followed by the Texas Supreme Court in *Hyundai*, 995 S.W.2d at 667).

Accordingly, Plaintiffs' negligent failure to warn/failure to heed claims should not be submitted to the jury separate from Plaintiffs' claim for a marketing defect, and Firestone is therefore entitled to judgment as a matter of law on Plaintiffs' negligent failure to warn/failure to heed claim.

Alternatively, Plaintiffs have presented no evidence and no legally sufficient evidence of any negligent failure to warn or any negligent failure to heed claim. Importantly, a failure to warn claim under Texas law -- whether grounded in common law negligence or a marketing defect under the Restatement -- must be based on a failure to warn about risks *that are foreseeable at the time of sale or distribution.* Texas does not recognize a "post-sale" duty to warn about risks that become known or knowable only after sale of the product. *See Arkwright-Boston Mfg. Mut. Ins. Co. v. Westinghouse Elec. Corp.*, 844 F.2d 1174, 1185 (5th Cir. 1988) ("[U]nder Texas law there is no post-sale common law duty to warn unless the manufacturer regains some significant degree of control over the product"); *Syrie v. Knoll Int'l*, 748 F.2d 304, 311-312 (5th Cir. 1984) ("[N]o Texas court has recognized a post-marketing duty on the part of a manufacturer to warn or recall its products absent the element of regained control") (affirming trial court's refusal to instruct the jury on negligence regarding a post-sale duty to warn); *see also Hendrix v. Bell Helicopter Textron, Inc.*,

634 F. Supp. 1551, 1557 (N.D. Tex. 1986) ("In Texas, a manufacturer generally does not have a duty to warn about hazards discovered after a product has been manufactured and sold").  Although Plaintiffs have asked this Court to make an "*Erie* guess" on this issue, the Fifth Circuit has already performed this analysis, and its answer is clear:  There is no post-sale duty to warn under Texas law.

Section 30118 of the Motor Vehicle Safety Act, 49 U.S.C. § 30118, likewise imposes no post-sale duty to warn in this case.  This section does not apply to manufacturers of original equipment tires, like Firestone in this case.  *See* Part VI.A below.  In any event, Plaintiffs do not attempt to rely on Section 30118 as a basis for a private, federal cause of action.  *See* Plaintiffs' Complaint, ¶ 2.3 (recognizing that jurisdiction in this Court is based solely on diversity of jurisdiction).

There is no evidence and no legally sufficient evidence that Firestone failed to warn about a risk that was reasonably foreseeable when Firestone sold the tire in question in approximately the 32nd week of 1997.  Moreover, even if there were such evidence, there is no evidence that the failure to make such warnings rendered the product unreasonably dangerous or not reasonably safe.  Further, there is no evidence and no legally sufficient evidence that any alleged negligent failure to warn about alleged risks associated with the tire in question was a proximate cause of Plaintiffs' alleged injuries.

**E.**     **Firestone is entitled to judgment as a matter of law regarding Plaintiffs' claim for negligent failure to recall.**

**1.**     **Firestone had no duty to recall under federal law.**

Plaintiffs rely on 49 U.S.C. §§ 30118-30120 to argue that federal law imposed a duty on Firestone to recall the tires at issue.  Those sections, however, do not impose any duties on a manufacturer of "original equipment" tires installed and sold on new vehicles -- such as Firestone in this case -- to issue recall notices.  *See* Part VI.A, *infra*.

8

## 2. In any event, Texas imposes no state law duty to recall.

As noted above, Plaintiffs do not argue that the Motor Vehicle Safety Act provisions create a private, federal cause of action against a manufacturer for failing to recall tires. *See* Plaintiffs' Complaint, ¶ 2.3 (recognizing that jurisdiction in this Court is based solely on diversity of jurisdiction). Rather, Plaintiffs argue that Texas recognizes a state law cause of action for failing to conduct a recall in those situations where the recall is mandated by federal law. Texas, however, recognizes no such cause of action. *See* Part VI.C, below.

Moreover, even if Texas recognizes a cause of action for negligent failure to recall, there is no evidence and no legally sufficient evidence, that a reasonably prudent manufacturer under the same or similar circumstances would have recalled the tire at issue. Further, there is no evidence and no legally sufficient evidence that any alleged negligent failure to recall the tire in question was a proximate cause of Plaintiffs' alleged injuries.

## 3. Moreover, any state law duty to recall would be pre-empted by federal law.

Although the Motor Vehicle Safety Act does not require Firestone to issue recall notices for original equipment tires, *see* Part VI.A, below, it nonetheless preempts any purported state law duty mandating such a recall. Congress has created in the Act a comprehensive scheme governing the recall of motor vehicles and motor vehicle equipment. In *Namovicz v. Cooper Tire & Rubber Co.*, 2001 WL 327886, *2 (D. Md. 2001), the court recognized that "[t]he effect of sections 30118-30120 is to *completely preempt* the area of vehicle and equipment recalls." (emphasis added). Thus, the court rejected any recall claim based on state law. *Id.* at *1-2.

Similarly, in *In re Bridgestone/Firestone Inc. ATX ATXII and Wilderness Tires Products Liability Litigation,* ___ F. Supp. 2d ___, 2001 WL 876385, *7 (S.D. Ind. 2001), the court found that "the comprehensiveness of the Safety Act with regard to recalls demonstrates convincingly that any

9

state law providing for a motor vehicle safety recall would frustrate the purposes of the Safety Act." The court therefore held that plaintiffs' claims based on a purported state law duty to recall were preempted, noting that any such "competing" duty "would undermine and frustrate the Safety Act's objectives . . . ." *Id.* at *5.

Although the Act allows states to prescribe "higher performance requirements" than those mandated under the Act, *see* 49 U.S.C. § 30103(b), the courts in *Namovicz* and *Bridgestone* made clear that the Act does *not* allow states to mandate recalls beyond those authorized under Section 30118. Importantly, by carefully differentiating between "replacement equipment" and "original equipment," Congress has made a deliberate policy decision that manufacturers of original equipment tires are *not* required to issue recall notices. *See* 49 U.S.C. § 30118; *see also* Part VI.A, *supra.*

Thus, imposing a state law duty to recall original equipment would directly conflict with Congress' determination that manufacturers of original equipment tires are not obligated to issue recall notices. Accordingly, any state law duty to recall is preempted by the Act.

### F.     Firestone Is Entitled to Judgment as a Matter of Law on All Negligence Claims Because Plaintiffs Presented No Evidence of Causation.

There is no evidence and no legally sufficient evidence that Plaintiffs' injuries were proximately caused by any negligence of Firestone, rather than as a result of other causes, including but not limited to (1) Ford's negligence or strict liability, (2) defects in the Ford Explorer, (3) the negligence of the driver, Plaintiff Jorge Rodriguez, (4) Plaintiffs' failure to properly maintain the tires, or (5) an unavoidable accident.

## II.     Firestone Is Entitled to Judgment as a Matter of Law on Plaintiffs' Claim for Design Defect.

A "design defect" means that the foreseeable risks of harm posed by the product could have been reduced or avoided by the adoption of a safer alternative design, and the omission of the safer

alternative design renders the product not reasonably safe. RESTATEMENT (THIRD) OF TORTS, § 2(b) and cmt. d; *Hernandez v. Tokai Corp.*, 2 S.W.3d 251 (Tex. 1999) (responding to certified question from Fifth Circuit). "Safer alternative design" means a product design other than the one actually used that in reasonable probability (1) would have prevented or significantly reduced the risk of the injury in question without introducing into the product other dangers of equal or greater magnitude; and (2) was economically and technologically feasible at the time the product left the control of Firestone by the application of existing or reasonably achievable scientific knowledge. RESTATEMENT (THIRD) OF TORTS, § 2(b) and cmt. f; *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 82.005 ("safer alternative design . . . than the one actually used that in reasonable probability . . . would have prevented or significantly reduced the risk of the claimant's personal injury . . . and was economically and technologically feasible at the time the product left the control of the manufacturer or seller by the application of existing or reasonably achievable scientific knowledge"). If Plaintiffs cannot show "that the safety benefits from [their] proposed design are foreseeably greater than the resulting costs, including any diminished usefulness or diminished safety," then the product is not unreasonably dangerous as a matter of law. *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 337, 335 (Tex. 1998); *see also Caterpillar Inc. v. Shears*, 911 S.W.2d 379, 384 (Tex. 1995).

There is no evidence and no legally sufficient evidence that there was a design defect in the Firestone Wilderness AT P235/75R15 tire in question at the time it left the possession of Firestone that was a producing cause of the injuries in question.

This is true because, among other reasons and without limitation, pursuant to Texas common law, Plaintiffs must show that the tire at issue was "unreasonably dangerous as designed, taking into consideration the utility of the product and the risk involved in its use." *American Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 432 (Tex. 1997). Texas courts, relying on the Restatement (Third) of

11

Torts, make clear that "a product need not be designed to reduce or avoid *unforeseeable* risks of harm." *See, e.g., Hernandez*, 2 S.W.3d at 257; *Martinez*, 977 S.W.2d at 335 (emphasis added). There is no evidence and no legally sufficient evidence that the foreseeable risks of the tire at issue outweighed its benefits. Even absent the Restatement (Third)'s foreseeability requirement, there is no evidence and no legally sufficient evidence that the tire is unreasonably dangerous. *See Borel v. Fibreboard Paper Products Corp.*, 493 F.2d 1076, 1087 (5th Cir. 1973) (noting that, under the Restatement (Second), a product is unreasonably dangerous if "on balance, the utility of the product does not outweigh the magnitude of the danger").

There is no evidence and no legally sufficient evidence that foreseeable risks of harm posed by the product could have been reduced or avoided by the adoption of a safer alternative design. There is also no evidence and no legally sufficient evidence that the omission of the safer alternative design renders the product not reasonably safe. There is also no evidence and no legally sufficient evidence that a product design existed other than the one actually used that in reasonable probability would have prevented or significantly reduced the risk of the injury in question without introducing into the product other dangers of equal or greater magnitude. There is also no evidence and no legally sufficient evidence that a product design existed that was economically and technologically feasible at the time the product left the control of Firestone by the application of existing or reasonably achievable scientific knowledge.

Plaintiffs must also prove that the alleged design defect was a "producing cause" of their injuries. TEX. CIV. PRAC. & REM. CODE § 82.005(a)(2). Producing cause means "an efficient, exciting, contributing cause which, in a natural sequence, produced the injuries complained of." *Morton Int'l v. Gillespie*, 39 S.W.3d 651, 658 (Tex. App.–Texarkana 2001, pet denied). Even if Plaintiffs had carried their burden of establishing a design defect (and they have not), there is no

evidence and no legally sufficient evidence that Plaintiffs' injuries resulted from any such defect, rather than as a result of other causes, including but not limited to (1) Ford's negligence or strict liability, (2) defects in the Ford Explorer, (3) the negligence of the driver, Plaintiff Jorge Rodriguez, (4) Plaintiffs' failure to properly maintain the tires, or (5) an unavoidable accident.

### III.   Firestone Is Entitled to Judgment as a Matter of Law on Plaintiffs' Claim for Manufacturing Defect.

Plaintiffs cannot recover for a manufacturing defect because there is no evidence and no legally sufficient evidence to support such a finding.  Under Texas law, to recover in strict liability for a manufacturing defect, the plaintiffs must show that (1) the tire contained a manufacturing defect, (2) when Firestone sold it, and (3) that this defect was a producing cause of the plaintiffs' injuries. *See Torrington Co. v. Stutzman*, 46 S.W.3d 829, 844 (Tex. 2000).[2]  A "manufacturing defect" with respect to the product means that the product departs from its intended design or specifications so as to render the product "unreasonably dangerous." RESTATEMENT (THIRD) OF TORTS, § 2(a) and cmt. c; *Torrington Co.*, 46 S.W.3d at 844; *see also Cimino v. Raymark Indus., Inc.*, 151 F.3d 297, 334 (5th Cir. 1998).  An "unreasonably dangerous" product is one that is dangerous to an extent beyond that which would be contemplated by the ordinary user of the product, with the ordinary knowledge common to the community as to the product's characteristics.  "The plaintiff *must prove* that he has been injured or damaged by a defective product, and the *mere possibility* that this may have occurred is not enough." *Carroll v. Ford Motor Co.*, 462 S.W.2d 57, 61 (Tex. Civ. App. – Houston [14th Dist.] 1970, no writ) (emphasis added); *see also Turbines, Inc. v. Dardis*, 1 S.W.3d 726, 737 (Tex.

---

[2]For purposes of this Motion, the evidence necessary to establish a manufacturing defect is the same under both the Second and Third Restatements of Torts. *See Hayles v. General Motors Corp.*, 82 F.Supp.2d 650, 655 (S.D. Tex. 1999) (applying Second Restatement, "[i]n a manufacturing defect case, the plaintiff must show a manufacturing flaw which renders the product unreasonably dangerous; that the defect existed at the time the product left the seller, and  that the defect was the producing cause of the plaintiff's injuries.").

CMsPDF - www.texiss.com

App. – Amarillo 1999, pet. denied) (reversing jury verdict in favor of plaintiff because the plaintiff had, at most, merely established "surmise and suspicion" that a manufacturing defect existed when the product left the defendant's hands).

There is no evidence and no legally sufficient evidence that there was a manufacturing defect in the Firestone Wilderness AT P235/75R15 in question at the time it left the possession of Firestone that was a producing cause of the injury in question.

This is true because, among other reasons and without limitation, there is no evidence and no legally sufficient evidence that the Firestone Wilderness AT P235/75R15 in question departed from its intended design or specifications so as to render the product one that is dangerous to an extent beyond that which would be contemplated by the ordinary user of the product, with the ordinary knowledge common to the community as to the product's characteristics.

There is also no evidence and no legally sufficient evidence that the accident in question resulted from any manufacturing defect in the tire, rather than as a result of other causes, including but not limited to (1) Ford's negligence or strict liability, (2) defects in the Ford Explorer, (3) the negligence of the driver, Plaintiff Jorge Rodriguez, (4) Plaintiffs' failure to properly maintain the tires, or (5) an unavoidable accident.

## IV.     Firestone Is Entitled to Judgment as a Matter of Law on Plaintiffs' Claim for Marketing Defect.

There is no evidence and no legally sufficient evidence that a marketing defect existed in the Firestone Wilderness AT P235/75R15 tire in question at the time it left the possession of Firestone that was a producing cause of the injury(s) in question.

A "marketing defect" with respect to the product means the failure to give adequate warnings of the product's dangers that were known or by the application of reasonably developed human skill and foresight should have been known or failure to give adequate instructions to avoid such dangers,

14

which failure rendered the product unreasonably dangerous as marketed. RESTATEMENT (THIRD) OF

TORTS, § 2(c). "Adequate" warnings and instructions mean warnings and instructions given in a form

that could reasonably be expected to catch the attention of a reasonably prudent person in the

circumstances of the product's use; and the content of the warnings and instructions must be

comprehensible to the average user and must convey a fair indication of the nature and extent of the

danger and how to avoid it to the mind of a reasonably prudent person. *Id.* "An unreasonably

dangerous" product is one that is dangerous to an extent beyond that which would be contemplated

by the ordinary user of the product with the ordinary knowledge common to the community as to the

product's characteristics. *Id.*

To prove a marketing defect, Plaintiffs must establish: (1) the existence of a risk of harm that

is inherent in the product or that may arise from the intended or reasonably anticipated use of the

product; (2) that the product supplier knew or should have known of a risk of harm; (3) the absence

of a warning or instruction rendered the product unreasonably dangerous to the ultimate user or

consumer; and (4) the existence of a causal nexus between the failure to warn or instruct and his

injury. *Jobe v. Penske Truck Leasing Corp.*, 882 S.W.2d 447, 450 (Tex. App.–Dallas 1994, no writ);

*see also* RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY § 2(c); RESTATEMENT (SECOND) OF

TORTS: PRODUCTS LIABILITY § 402A.

There is no evidence and no legally sufficient evidence that Firestone failed to give adequate

warnings of the product's dangers that were known or by the application of reasonably developed

human skill and foresight should have been known or failure to give adequate instructions to avoid

such dangers, which failure rendered the product unreasonably dangerous as marketed. This is true

because, among other reasons and without limitation:

15

(a)     There is no evidence and no legally sufficient evidence that Firestone could have foreseen that the combination of its tire with the inherently flawed and unstable Ford Explorer would result in a serious accident arising out an otherwise minor inconvenience, the loss of tread.

(b)     There was no evidence and no legally sufficient evidence of any warning or instruction that would have added to the safety of Firestone's tire.

(c)     There was no evidence and no legally sufficient evidence that Firestone's tires presented an unreasonable risk of harm to Plaintiffs in their condition at the time they left Firestone's control.

(d)     There is also no evidence and no legally sufficient evidence of an unreasonable risk associated with Firestone's tires.

(e)     There was no evidence and no legally sufficient evidence that Firestone's alleged failure to give a warning or instruction caused the accident in question.  Cause in fact requires proof that an act or omission was a substantial factor in bringing about injury which would not otherwise have occurred.  *Guzman v. Synthes (U.S.A.)*, 20 S.W.3d 717, 720 (Tex. App.–San Antonio 1999, pet. denied).  There is no evidence that the adequacy of Firestone's instructions or warnings, or lack thereof, substantially contributed to Plaintiffs' accident.  There is no causal nexus linking a failure to warn on Firestone's part with this accident.

(f)     Firestone had no duty, after the tires left its control, to warn Plaintiffs of any defects or to recall its tires.  *See Arkwright-Boston Mfg. Mut. Ins. Co. v. Westinghouse Elec. Co.*, 844 F.2d 1174, 1185 (5th Cir. 1988); *Syrie v. Knoll Int'l*, 748 F.2d 304, 311-12 (5th Cir. 1984); *see also* Part I.D, *supra*.  Plaintiffs rely on evidence showing that Firestone eventually became aware of allegations that its tires had an unusually high failure rate to prove that Firestone knew or should have known of a defect in its tires.  All of this evidence, if it proves anything at all, only tends to show that Firestone

16

became aware of a potential problem *after* it had sold the tires at issue in this case. Because there is no post-sale duty to warn, Firestone owed no duty to these Plaintiffs to warn, instruct, or recall the tires at issue upon learning about the claims of tire failures.

**V.     Firestone Is Entitled to Judgment as a Matter of Law on All Strict Liability Claims Because Plaintiffs Presented No Evidence of Causation.**

There is no evidence and no legally sufficient evidence that Firestone's actions were the producing cause of Plaintiffs' injuries, rather than as a result of other causes, including but not limited to (1) Ford's negligence or strict liability, (2) defects in the Ford Explorer, (3) the negligence of the driver, Plaintiff Jorge Rodriguez, (4) Plaintiffs' failure to properly maintain the tires, or (5) an unavoidable accident.

**VI.    Firestone Is Entitled to Judgment as a Matter of Law on Plaintiffs' Claim for Breach of Warranties.**

**A.    Firestone is entitled to judgment as a matter of law on Plaintiffs' claim for breach of express warranty.**

In order to prove breach of express warranty, Plaintiffs must prove that (1) an express warranty was made; (2) it was part of the basis of the bargain; (3) the buyer relied on the express warranty; (4) the goods failed to comply with the warranty; (5) the buyer was financially injured; and (6) the breach of the express warranty proximately caused the injury. *Crosbyton Seed Co. v. Mechura Farms*, 875 S.W.2d 353, 361 (Tex. App.—Corpus Christi 1994, no writ). Plaintiffs must also prove that they gave notice to Firestone within a reasonable time after they discovered or should have discovered the alleged breach. *See* TEX. BUS. & COM. CODE § 2.607(c); *City of Marshall v. Bryant Air Cond. Co.*, 650 F.2d 724, 727 (5th Cir. 1981) (recognizing that under Texas law reasonable notice of breach of warranty is an element of plaintiff's claim); *Lochinvar v. Meyers*, 930 S.W.2d 182, 189 (Tex. App.--Dallas 1996, no writ) (same); *Cox v. Mesa Petroleum Co.*, 572 S.W.2d 110, 112 (Tex. Civ.. App.--Amarillo 1978, writ ref'd n.r.e.) (same).

An express warranty is created when: (1) the seller makes an affirmation of fact or promise to the buyer that relates to the goods and becomes part of the basis of the bargain; (2) the seller describes the goods and such description is made part of the basis of the bargain; or (3) any sample or model of the goods is made part of the basis of the bargain. TEX. BUS. & COM. CODE § 2.313(a). An affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty. *Id.* § 2.313(b).

There is no evidence that Firestone made an affirmation of fact or a promise to the plaintiffs that relates to the tire in question. *Id.* § 2.313(a)(1). Plaintiffs have likewise presented no evidence that Firestone described the tire to the Plaintiffs. *Id.* § 2.313(a)(2). Additionally, Plaintiffs have presented no evidence that any sample or model of the tire in question was made a part of the basis of the bargain. *Id.* § 2.313(a)(3). In any event, even if Firestone made any affirmation of fact or promise about the tire, described the tire, or provided any sample or model of the tire, plaintiffs have presented no evidence that such affirmation, promise, description, sample, or model became part of the basis of the bargain. *Id.* § 2.313(a). Moreover, Plaintiffs have presented no evidence that the tire in question failed to comply with any alleged express warranty given. Firestone is not liable for any alleged breach of express warranty because plaintiffs have presented no evidence to show that they relied on the alleged warranty. *American Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 436 (Tex. 1997). Plaintiffs have also presented no evidence that Firestone's alleged breach of an express warranty proximately caused their financial injuries. *Crosbyton Seed*, 875 S.W.2d at 361-62. Moreover, any statement Firestone may have made concerning the tire in question was merely an affirmation of the tire's value or Firestone's opinion or commendation of the tire. Such affirmation, opinion, or commendation does not create an express warranty. *Id.* § 2.313(b).

Moreover, Plaintiffs as a matter of law failed to provide reasonable notice to Firestone of the alleged breach. Indeed, it was not until the business day before this trial began that Plaintiffs ever asserted a claim for breach of express or implied warranty.

**B.    Firestone is entitled to judgment as matter of law on Plaintiffs' claim for breach of the implied warranty of merchantability.**

Plaintiffs' claim for breach of an implied warranty of merchantability should not be submitted to the jury because it is wholly duplicative of and functionally identical to Plaintiffs' design defect claim. *See Hyundai Motor Co. v. Rodriguez*, 995 S.W.2d 661, 665-66 (Tex. 1999). Plaintiffs' claims for breach of implied warranty of merchantability and design defect stem from a single complaint. *Id.* at 665. Plaintiffs have offered the same set of facts to support their claim for breach of implied warranty of merchantability and their design defect claim. *Id.* Indeed, the two inquiries call for the same factual finding. *Id.* at 666. To "avoid confusing the jury and the possibility of inconsistent findings," this Court should refuse to submit a jury question regarding implied warranty of merchantability. *Id.* at 665. Submitting duplicate claims would also constitute an improper comment on the weight of the evidence.

Moreover, Plaintiffs have offered no evidence, or alternatively no legally sufficient evidence, of a breach of implied warranty of merchantability. To recover for breach of implied warranty of merchantability, a plaintiff must prove that (1) goods purchased by plaintiff were defective at the time they left the manufacturer's or seller's possession, and (2) that the defect in the goods proximately caused injury to the plaintiff. *See Plas-Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 444 (Tex. 1989) (discussing defective goods for purposes of implied warranty of merchantability); *Signal Oil and Gas Co. v. Universal Oil Products*, 572 S.W.2d 320, 328 (Tex. 1978) (proximate cause required for breach of implied warranty action); *see also* TEX. BUS. & COM. C. § 2.314 (defining merchantable goods). Plaintiffs must also prove that they gave notice to Firestone within a reasonable time after they

19

discovered or should have discovered the alleged breach. *See* TEX. BUS. & COM. CODE § 2.607(c);

*City of Marshall v. Bryant Air Cond. Co.*, 650 F.2d 724, 727 (5th Cir. 1981) (recognizing that under

Texas law reasonable notice of breach of warranty is an element of plaintiff's claim); *Lochinvar v.*

*Meyers*, 930 S.W.2d 182, 189 (Tex. App.--Dallas 1996, no writ) (same); *Cox v. Mesa Petroleum Co.*,

572 S.W.2d 110, 112 (Tex. Civ. App.--Amarillo 1978, writ ref'd n.r.e.) (same).

Plaintiffs have presented no evidence that the Firestone tire in question was defective at the

time it left Firestone's possession. Additionally, Plaintiffs have presented no evidence that any

alleged defect in the Firestone tire at issue proximately caused injury to the Plaintiffs, as opposed to

other causes, including but not limited to (1) Ford's negligence or strict liability, (2) defects in the

Ford Explorer, (3) the negligence of the driver, Plaintiff Jorge Rodriguez,  (4) Plaintiffs' failure to

properly maintain the tires, or (5) an unavoidable accident.

Moreover, Plaintiffs as a matter of law failed to provide reasonable notice to Firestone of the

alleged breach. Indeed, it was not until the business day before this trial began that Plaintiffs ever

asserted a claim for breach of express or implied warranty.

As a result, Plaintiffs claim for breach of implied warranty of merchantability must fail as a

matter of law.

### C.     Firestone is entitled to judgment as a matter of law on Plaintiffs' claim for breach of the implied warranty of fitness for a particular purpose.

To recover for breach of implied warranty of fitness for a particular purpose, a plaintiff must

prove:  (1) the buyer of the goods intended to use the good for a specific and peculiar purpose, (2) the

seller or manufacturer of the good knew or had reason to know of the buyer's specific and peculiar

use of the goods, (3) the buyer relied on the seller's skill and/or knowledge to select or furnish

suitable goods for the specified purpose, (4) the goods did not meet the specified purpose (i.e., the

seller breached its warranty of fitness), and (5) the failure of the goods to meet this specified purpose

20

proximately caused an injury to the buyer. *See* TEX. BUS. & COM. C. § 2.315; *Lanphier Construction Co. v. Fowco Construction Co.*, 523 S.W.2d 29, 41 (Tex.Civ.App.–Corpus Christi 1975, writ ref'd n.r.e.); *Miles v. Ford Motor Co.*, 922 S.W.2d 572, 586 (Tex.App.–Texarkana 1996), *rev'd on other grounds*, 967 S.W.2d 377 (Tex. 1988); *Sipes v. General Motors Corp.*, 946 S.W.2d 143, 158-59 (Tex.App.–Texarkana 1997, pet. denied) (all discussing requirements for implied warranty); *see also Signal Oil and Gas Co. v. Universal Oil Products*, 572 S.W.2d 320, 328 (Tex. 1978) ("the buyer may recover only those consequential damages proximately caused by the breach of warranty"). Plaintiffs must also prove that they gave notice to Firestone within a reasonable time after they discovered or should have discovered the alleged breach. *See* TEX. BUS. & COM. CODE § 2.607(c); *City of Marshall v. Bryant Air Cond. Co.*, 650 F.2d 724, 727 (5th Cir. 1981) (recognizing that under Texas law reasonable notice of breach of warranty is an element of plaintiff's claim); *Lochinvar v. Meyers*, 930 S.W.2d 182, 189 (Tex. App.--Dallas 1996, no writ) (same); *Cox v. Mesa Petroleum Co.*, 572 S.W.2d 110, 112 (Tex. Civ.. App.--Amarillo 1978, writ ref'd n.r.e.) (same).

The peculiar purpose for which the buyer intends to use the goods "must be a particular nonordinary purpose." *Sipes*, 946 S.W.2d at 158 (citing *Miles*, 922 S.W.2d at 587). Thus, where buyers intend to use the goods merely for ordinary purposes– such as using an automobile to carry passengers– the buyer cannot recover on an implied warranty of fitness cause of action. *See Miles*, 922 S.W.2d at 587. Similarly, buyers who do not communicate their intended extraordinary use to the seller or manufacturer cannot recover on an implied warranty of fitness cause of action. *See Tracor, Inc. v. Austin Supply & Drywall Co., Inc.*, 484 S.W.2d 446, 448 (Tex.Civ.App.–Austin 1972, writ ref'd n.r.e.).

As a matter of law, there is no evidence and no legally sufficient evidence of the elements of the claim for breach of implied warranty of fitness for a particular purpose. First, there is no evidence

21

and no legally sufficient evidence that Plaintiffs intended to use Firestone's tires for anything other than ordinary uses.  Second, there is no evidence and no legally sufficient evidence that Plaintiffs informed Firestone of any abnormal use to which they intended to use their Firestone tires.  Third, since Plaintiffs failed to communicate to Firestone any extraordinary use which they intended, there is no evidence and no legally sufficient evidence that Plaintiffs relied on Firestone's knowledge or skill to furnish a particular tire to meet any purported extraordinary use.  Fourth, there is no evidence and no legally sufficient evidence that the Firestone tires equipped on Plaintiffs' vehicle failed to meet any communicated extraordinary use.  Finally, there is no evidence and no legally sufficient evidence that any alleged failure to meet a communicated extraordinary use proximately caused Plaintiffs' injuries.

Moreover, Plaintiffs as a matter of law failed to provide reasonable notice to Firestone of the alleged breach.  Indeed, it was not until the business day before this trial began that Plaintiffs ever asserted a claim for breach of express or implied warranty.

As a result, Plaintiffs' cause of action for breach of implied warranty of fitness for a particular purpose fails as a matter of law.

## VII.   Firestone Is Entitled to Judgment as a Matter of Law on Plaintiffs' Claim for Negligence Per Se.

Plaintiffs' claims that Firestone had a duty to recall its allegedly defective tires or notify consumers of an alleged defect in its tires pursuant to Sections 30118-30120 of the Motor Vehicle Safety Act, 49 U.S.C. §§ 30118-30120, and that Firestone's failure to recall or notify is negligence per se, *see* Plaintiffs' Complaint at ¶ 7.3, fail as a matter of law.  First, Sections 30118-30120 do not impose on Firestone any duty to issue recall notices in connection with its tires installed as original equipment on Ford vehicles.  Second, Sections 30118-30120 do not support a negligence per se claim

22

under Texas law. Third, there is no evidence and no legally sufficient evidence that Firestone violated Section 30118, 30119, or 30120 of the Motor Vehicle Safety Act.

**A.     Sections 30118-30120 of the Motor Vehicle Safety Act impose no duty on Firestone to recall tires installed as original equipment on motor vehicles**.

Plaintiffs allege that Sections 30118-30120 of the Motor Vehicle Safety Act impose on Firestone a duty to recall its allegedly defective ATX, ATX II, and Wilderness tires. *See* Plaintiffs' Complaint at ¶ 7. The recall notification provisions of the Motor Vehicle Safety Act, however, apply only to "motor vehicle[s] or replacement equipment." 49 U.S.C. § 30118. A motor vehicle is defined as "a vehicle driven or drawn by mechanical power and manufactured primarily for use on public streets, roads, and highways, but does not include a vehicle operated only on a rail line." *Id.* § 30102(a)(6). Replacement equipment is defined as "motor vehicle equipment (including a tire) that is not original equipment." *Id.* § 30102(b)(1)(D). Original equipment is defined as "motor vehicle equipment (including a tire) installed in or on a motor vehicle at the time of delivery to the purchaser." *Id.* § 30102(b)(1)(C). Importantly, the recall notification provisions do *not* apply to original equipment. *See id.* § 30118.[3] The tire in question here was original equipment on Plaintiffs' Ford Explorer. Accordingly, the Motor Vehicle Safety Act does not impose on Firestone any duty to issue recall notices. Because Sections 30118-30120 of the Motor Vehicle Safety Act imposed no duty on Firestone to recall Plaintiffs' tire, Firestone was not negligent per se as a matter of law.

**B.     Sections 30118–30120 of the Motor Vehicle Safety Act do not support a claim for negligence per se under Texas law.**

Even if Sections 30118-30120 of the Motor Vehicle Safety Act imposed a duty on Firestone to recall tires installed as original equipment on motor vehicles (and they do not), Plaintiffs still could

---

[3] The duties of a manufacturer of original equipment tires under the Act are limited to remedying a defective or noncomplying tire after the vehicle manufacturer has given the notice required under Sections 30118 and 30119. *See* 49 U.S.C. § 30120(b).

CVISPDF - www.teolio.com

Cir. 1985) (emphasis in original). Therefore, when determining whether a statute provides an appropriate basis for civil liability, the focus must be on whether the duties set forth in the statute are analogous to those set forth in the local tort law. *See id.; see also Johnson v. Sawyer*, 47 F.3d 716, 729 (5th Cir. 1995) (en banc).

The alleged duty to recall found in Sections 30118-30120 of the Motor Vehicle Safety Act is not analogous to any duty set forth in Texas law. There is no duty to recall under Texas law. *See Syrie v. Knoll Int'l*, 748 F.2d 304, 310 (5th Cir. 1984) (stating that no Texas court has recognized a post-marketing duty on the part of a manufacturer to recall its product absent a showing that the manufacturer regained a significant degree of control over that product). Indeed, the Texas Supreme Court recently declined the opportunity to adopt section 11 of the Restatement (Third) of Torts, which imposes a duty to recall on sellers of commercial products, including manufacturers. *Torrington v. Stutzman*, 46 S.W.3d 829, 836-37 (Tex. 2000) ("[W]e express no opinion whether [section 11 of the *Restatement* is] consistent with established Texas law"); *see also* Douglas R. Richmond, *Expanding Products Liability: Manufacturers' Post Sale-Duty to Warn, Retrofit, and Recall*, 36 IDAHO L. REV. 7, 12 (1999) (questioning the importance of the *Restatement (Third)* because "[p]roducts liability law is well-settled in most states, and relatively few courts now need the guidance that the *Restatement (Second)* once provided") (italics added).

Because Sections 30118-30120 of the Motor Vehicle Safety Act do not correspond to any pre-existing common law duty under Texas law, Plaintiffs are not entitled to recover for negligence per se as a matter of law.

> **D.      Sections 30118-30120 of the Motor Vehicle Safety Act Do Not Define the Required Conduct Clearly Enough to Support Negligence Per Se.**

When deciding whether to allow a negligence per se claim, courts must also consider "whether the statute clearly defines the prohibited or required conduct," *Perry*, 973 S.W.2d at 307. In order

for negligence per se to apply, the legislature must have substituted a specific standard of conduct for the standard of a reasonably prudent person. *See Ordonez v. M.W. McCurdy & Co.*, 984 S.W.2d 264, 268 (Tex. App.-Houston [1st Dist.] 1998, no pet.). For instance, a legislative prohibition on crossing railroad tracks when trains are approaching provides the jury with a specific factual inquiry that can preclude a more difficult examination of whether a particular motorist's failure to stop at a particular railroad crossing was unreasonable. *See, e.g., Southern Pacific Co. v. Castro*, 493 S.W.2d 491, 493-94 (Tex. 1973).

The situation is far different when a statute or regulation fails to provide clear guidance on what conduct breaches the standard of care. Not only does such a statute or regulation fail to put the public on notice of what actions are unreasonable as a matter of law, but it does not aid the jury in determining whether the defendant has breached any duty. *See Perry*, 973 S.W.2d at 307; *Carter v. William Sommerville and Sons, Inc.*, 584 S.W.2d 274, 278-79 (Tex. 1979). In particular, there can be no negligence per se if a statute or regulation is "couched in broad and vague terms which arguably include the 'reasonable man' standard." *Renfroe v. Ramsey*, 477 S.W.2d 648, 650 (Tex. Civ. App.-Houston [14th Dist.] 1972, no writ) (quoting J. Ratliff, *Negligence Per Se in Texas: An Analysis of Statutory Excuse and Related Doctrines With Proposed Special Issues and Instructions*, 41 TEXAS L. REV. 104, 114 (1962)). "So, simply put, if violation of the duty imposed by a statute is dependent upon a *jury* determining if the act was unreasonable or imprudent, then the statute cannot be one involving negligence per se." *Borden, Inc. v. Price*, 939 S.W.2d 247, 250 (Tex. App.-Amarillo 1997, writ denied) (emphasis in original).[5] Texas courts have refused to apply negligence per se whenever

---

[5] This principle has a long history in Texas law. *See, e.g., Missouri-Kan.-Tex. R.R. v. McFerrin*, 291 S.W.2d 931, 935-36 (Tex. 1956) (holding that because statute required motorists to proceed "safely," plaintiff would have to prove ordinary negligence); *Williams v. Price*, 308 S.W.2d 185, 188 (Tex. Civ. App.-Ft. Worth 1957, writ ref'd n.r.e.); *Booker v. Baker*, 306 S.W.2d 767, 773-75 (Tex. Civ. App.-Dallas 1957, writ ref'd n.r.e.).

CHAPDF - www.texis.com

"a duty is not absolute, but, rather, is conditioned upon a finding that the violator failed to act 'safely' or 'prudently.'" *Ordonez*, 984 S.W.2d at 269 (citations omitted).

Here, Sections 30118-30120 of the Motor Vehicle Safety Act do not clearly define the prohibited conduct. The only language in Sections 30118-30120 that even arguably creates a duty for a manufacturer of a motor vehicle or replacement equipment (not a manufacturer of original equipment) to take any action before the Secretary of Transportation has ordered a notification of defect is Section 30118(c), which provides in relevant part:

> A manufacturer of a motor vehicle or replacement equipment shall notify the Secretary by certified mail, and the owners, purchasers, and dealers, of the vehicle or equipment as provided by section 30119(d)[6] of this section if the manufacturer –
>
> (1)  learns the vehicle or equipment contains a defect and decides in good faith that the defect is related to motor vehicle safety.

49 U.S.C. § 30118(c). A defect is related to motor vehicle safety if it presents an unreasonable risk of accidents or injuries. *See* 49 U.S.C. § 30102(8). This statutory language clearly contains "broad and vague terms which arguably include the 'reasonable man' standard," making it inappropriate for the imposition of negligence per se. *Renfroe*, 477 S.W.2d at 650 (citation omitted).

In any event, even if the Motor Vehicle Safety Act creates a negligence per se standard, Plaintiffs presented no evidence that Firestone violated any applicable provision of that Act, or that any such violation was a proximate cause of Plaintiffs' injuries.

---

[6] It should be noted that Section 30118(c) imposes only a duty to notify of a defect under Section 30119(d). *See* 49 U.S.C. § 30118(c). It imposes no duty to remedy the defect. *See id.* §§ 30118(c), 30119(d).

**E.**     **Any State Law Negligence Per Se Cause of Action For Failure to Notify or Recall is Preempted by Sections 31008-30120 of the Motor Vehicle Safety Act.**

Finally, the Motor Vehicle Safety Act preempts any purported state law negligence per se cause of action for failure to notify or recall.   Congress has created in the Act a comprehensive scheme governing the recall of motor vehicles and motor vehicle equipment. In *Namovicz v. Cooper Tire & Rubber Co.*, 2001 WL 327886, *2  (D. Md. 2001), the court recognized that "[t]he effect of sections 30118-30120 is to *completely preempt* the area of vehicle and equipment recalls." (emphasis added). Thus, the court rejected any recall claim based on state law. *Id.* at *1-2.

Similarly, in *In re Bridgestone/Firestone Inc. ATX ATXII and Wilderness Tires Products Liability Litigation, ___ F. Supp. 2d ___, 2001 WL 876385, *7 (S.D. Ind. 2001), the court found that "the comprehensiveness of the Safety Act with regard to recalls demonstrates convincingly that any state law providing for a motor vehicle safety recall would frustrate the purposes of the Safety Act." The court therefore held that plaintiffs' claims based on a purported state law duty to recall were preempted, noting that any such "competing" duty "would undermine and frustrate the Safety Act's objectives . . . ." *Id.* at *5.

Although the Act allows states to prescribe "higher performance requirements" than those mandated under the Act, *see* 49 U.S.C. § 30103(b), the courts in *Namovicz* and *Bridgestone* made clear that the Act does *not* allow states to mandate recalls beyond those authorized under Section 30118.  Importantly, by carefully differentiating between "replacement equipment" and "original equipment," Congress has made a deliberate policy decision that manufacturers of original equipment tires are *not* required to issue recall notices. *See* 49 U.S.C. § 30118; *see also* Part VI.A, *supra*.

Thus, imposing any state law duty to notify or recall with respect to original equipment, including such a duty premised on negligence per se, would directly conflict with Congress'

28

determination that manufacturers of original equipment tires are not obligated to issue recall notices. Accordingly, any state law duty to notify or recall is preempted by the Act.

## VIII.  Plaintiffs Cannot Recover Actual Damages as a Matter of Law.

In order to recover damages under Texas law, a plaintiff must prove a causal nexus between the defendant's conduct and the damages sought. *Haynes & Boone v. Bowser Bouldin, Ltd.*, 896 S.W.2d 179, 182-83 (Tex. 1995).  In other words, the plaintiff must prove that the damages sought were the result of the defendant's conduct.  *Id.*  Without proof of legal causation, there can be no recovery of damages. *See id.*; *Doe v. Boys Club of Greater Dallas, Inc.*, 907 S.W.2d 472, 477-78 (Tex. 1995); *Union Pump Co. v. Allbritton*, 898 S.W.2d 773, 775-76 (Tex. 1995).  Because there is no legally sufficient evidence that Firestone's conduct caused Plaintiffs' injuries, Plaintiffs cannot recover any damages as a matter of law.

In addition, the evidence presented by Plaintiffs in an attempt to prove Olga Rodriguez's personal injury damage claims is, as a matter of law, not legally sufficient.  There is no evidence and no legally sufficient evidence that Olga Rodriguez sustained loss of parental consortium resulting from the physical injury to Marisa J. Rodriguez.

The evidence presented by Plaintiffs in an attempt to prove Marisa Rodriguez's personal injury damage claims is, as a matter of law, not legally sufficient.  There is no evidence and no legally sufficient evidence that Marisa Rodriguez sustained loss of parental consortium resulting from the physical injury to Marisa J. Rodriguez.

The evidence presented by Plaintiffs in an attempt to prove Joel J. Rodriguez's personal injury damage claims is, as a matter of law, not legally sufficient.  There is no evidence and no legally sufficient evidence that Joel J. Rodriguez sustained loss of parental consortium resulting from the physical injury to Marisa J. Rodriguez.

The evidence presented by Plaintiffs in an attempt to prove Marisa J. Rodriguez's personal injury damage claims is, as a matter of law, not legally sufficient. For example, and without limitation, there is no evidence and no legally sufficient evidence that Marisa J. Rodriguez sustained loss of earning capacity in the past or in reasonable probability will sustain loss of earning capacity in the future.

The evidence presented by Plaintiffs in an attempt to prove Joel Rodriguez's personal injury damage claims is, as a matter of law, not legally sufficient. For example, and without limitation, there is no evidence and no legally sufficient evidence that Joel Rodriguez in reasonable probability will sustain physical pain and mental anguish in the future; sustained loss of earning capacity in the past and in reasonable probability will sustain loss of earning capacity in the future; sustained disfigurement in the past or in reasonable probability will sustain disfigurement in the future; sustained physical impairment in the past or in reasonable probability will sustain physical impairment in the future; and sustained reasonable expenses of necessary medical care in the past and in reasonable probability will sustain reasonable expenses of necessary medical care in the future. In addition, there is no evidence and no legally sufficient evidence that Joel Rodriguez has sustained loss of household services in the past and in reasonable probability will sustain loss of household services in the future or that Joel Rodriguez has sustained loss of consortium in the past and in reasonable probability will sustain loss of consortium in the future resulting from the physical injury to Marisa J. Rodriguez.

The evidence presented by Plaintiffs in an attempt to prove Jorge Rodriguez's personal injury damage claims is, as a matter of law, not legally sufficient. For example, and without limitation, there is no evidence and no legally sufficient evidence that Jorge Rodriguez in reasonable probability will sustain physical pain and mental anguish in the future; sustained loss of earning capacity in the past

and in reasonable probability will sustain loss of earning capacity in the future; sustained disfigurement in the past or in reasonable probability will sustain disfigurement in the future; sustained physical impairment in the past or in reasonable probability will sustain physical impairment in the future; and sustained reasonable expenses of necessary medical care in the past and in reasonable probability will sustain reasonable expenses of necessary medical care in the future.

The evidence presented by Plaintiffs in an attempt to prove Joel J. Rodriguez's personal injury damage claims is, as a matter of law, not legally sufficient. For example, and without limitation, there is no evidence and no legally sufficient evidence that Joel J. Rodriguez in reasonable probability will sustain physical pain and mental anguish in the future; sustained loss of earning capacity in the past and in reasonable probability will sustain loss of earning capacity in the future; sustained disfigurement in the past or in reasonable probability will sustain disfigurement in the future; sustained physical impairment in the past or in reasonable probability will sustain physical impairment in the future; and sustained reasonable expenses of necessary medical care in the past and in reasonable probability will sustain reasonable expenses of necessary medical care in the future.

IX.    **Firestone Is Entitled to Judgment as a Matter of Law on Plaintiffs' Claim for Punitive Damages.**

     A.    **Because Plaintiffs Cannot Recover on Their Tort Claims, They Cannot Recover Punitive Damages.**

Texas law only allows punitive damages based on tort claims. *Twin City Fire Ins. Co. v. Davis*, 904 S.W.2d 663, 665 (Tex. 1995). Since Plaintiffs' tort claims fail as a matter of law for the reasons discussed above, Plaintiffs' claims for punitive damages also fail as a matter of law.

     B.    **Because the Actual Damages Findings Fail, No Punitive Damages Can Be Awarded.**

Texas law does not allow recovery of punitive damages in the absence of a sustainable finding of actual damages. *Davis*, 904 S.W.2d at 665. Because there is no legally sufficient evidence that

31

Firestone's actions caused damages to Plaintiffs for the reasons discussed above, no punitive damages can be awarded as a matter of law.

**C.      No Punitive Damages Can Be Awarded Because There Is No Legally Sufficient Evidence of the Required Scienter.**

There is no legally sufficient evidence that Firestone acted with "malice" toward Plaintiffs as that term has been interpreted under Texas law. A finding of malice requires evidence that: (1) the defendant's conduct was specifically intended by the defendant to cause substantial injury to the plaintiff; or (2) the defendant's act was carried out with a flagrant disregard for the rights of others and with actual awareness on the part of the defendant that the act would, in reasonable probability, result in human death, great bodily harm, or property damage. TEX. CIV. PRAC. & REM. CODE § 41.001(6). Because there is no legally sufficient evidence that Firestone acted with malice, no punitive damages can be awarded against Firestone in this case.

**D.      No Punitive Damages Can Be Awarded Because There Is No Legally Sufficient Evidence to Support A Punitive Damages Award Against Firestone For the Acts of Its Vice Principals.**

In Texas, punitive damages may be assessed against a corporation only for the acts of the corporation's vice principals. Plaintiffs must therefore establish that the acts or omissions complained of were: (1) acts or omissions of management-level employees of Firestone who were acting in the course and scope of their employment, (2) acts or omissions the doing and manner of which were authorized by a management-level employee of Firestone, or (3) acts or omissions ratified or approved by a management-level employee of Firestone. A "management-level employee" is a corporate officer; someone with authority to employ, direct, and discharge servants of Firestone; one engaged in the performance of nondelegable or absolute duties; or someone who has authority to manage the entire corporation or a department or division of its business. *Fisher v. Carrousel Motor*

*Hotel, Inc.*, 424 S.W.2d 627, 630 (Tex. 1967); *King v. McGruff*, 234 S.W.2d 403, 405 (Tex. 1950) (adopting RESTATEMENT (SECOND) OF TORTS § 909).

There is no legally sufficient evidence that any of the conduct about which Plaintiffs complain was performed by a Firestone management-level employee acting within the course and scope of his or her employment, was authorized by a Firestone management level employee, or was ratified or approved by a Firestone management level employee. There is also no legally sufficient evidence that any of the conduct at issue was performed by a Firestone employee engaged in the performance of a nondelegable or absolute duty of the corporation. Because there is no legally sufficient evidence that the acts complained of were the acts of Firestone's vice principals, Plaintiffs cannot as a matter of law recover punitive or exemplary damages against Firestone.

### E. Any Punitive Damages Award In This Case Would Violate the U.S. and Texas Constitutions.

No punitive damages can be awarded against Firestone in this case because any such award would violate various provisions of both the Texas and the United States constitutions, including the Texas due course of law clause and the federal due process clause. *See BMW of North America, Inc. v. Gore*, 116 U.S. 1589 (1996); U.S. CONST. art. I, § 9, cl. 3, § 10, cl. 1, amends. V, VI, VIII, XIV § 1; TEX. CONST. art. I, §§ 13, 16, 19.

No punitive damages can be awarded in this case because, as a matter of law, neither Firestone's conduct nor its mental state met the required standard under Texas law.

Any award of punitive damages in this case would be made without adequate safeguards against arbitrary and excessive awards, in violation of the due process provision of the United States Constitution and the due course of law provision of the Texas Constitution, as well as Firestone's other constitutional rights. *See e.g.*, U.S. CONST. art. I, § 9, cl. 3, § 10, cl. 1, amends. V, VI, VIII, XIV § 1; TEX. CONST. art. I, §§ 13, 16, 19.

Both the United States and the Texas Constitutions require that a predicate finding for punitive damages, as well as the punitive damage finding itself, be based on clear and convincing evidence. *See e.g.,* U.S. CONST. art. I, § 9, cl. 3, § 10, cl. 1, amends. V, VI, VIII, XIV § 1; TEX. CONST. art. I, §§ 13, 16, 19. Therefore, any predicate finding for punitive damages or any punitive damage finding itself that is made by the jury based upon a standard less than clear and convincing evidence violates both the United States and Texas constitutions and cannot provide the basis for an award of punitive damages against Firestone.

The scienter requirements for punitive damages applicable in this case provide overly vague and insufficient standards. Permitting the jury to assess punitive damages based on such overly vague and insufficient standards confers standardless discretion on the jury and deprives it of adequate guidance in making punitive awards. This violates the due process provision of the United States Constitution and the due course of law provision of the Texas Constitution, as well as Firestone's other constitutional rights. *See, e.g.*, U.S. CONST. art. I, § 9, cl. 3, § 10, cl. 1, amends. V, VI, VIII, XIV § 1; TEX. CONST. art. I, §§ 13, 16, 19.

No punitive damages can be awarded against Firestone in this case because any such award would impose a criminal penalty without the safeguards guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments of the Constitution of the United States; similar provisions of the Texas Constitution, including Article I, Sections 3, 10, 13, 14 and 19; and *BMW of North America v. Gore*, 517 U.S. 559 (1995). Furthermore, imposing punitive damages would constitute an excessive fine under the Eighth Amendment, deny equal protection of the laws under the Fourteenth Amendment, and violate the due process clause of the Fifth and Fourteenth Amendments.

Plaintiffs cannot recover punitive damages as a matter of law, and any such award would be unconstitutional, because, among other reasons:

A.      Such an award would impose penal sanctions based on a burden of proof less than the "beyond a reasonable doubt" standard required in criminal cases.  This would violate the due process and equal protection clauses of the Fourteenth Amendment of the United States Constitution and Article I, Sections 3 and 19 of the Texas Constitution.

B.      Texas law and the Texas punitive damage scheme, both facially and as applied in this case, provide no constitutionally adequate or meaningful standards to guide a jury or the court in determining whether, and if so in what amount, to award punitive damages.  There is no sufficiently clear definition of the conduct or mental state that makes punitive damages permissible, and no sufficiently clear standard for determining the appropriate size of an award.  This violates the due process and equal protection clauses of the Fifth and Fourteenth Amendments of the United States Constitution, as well as Article I, sections 3 and 19 of the Texas Constitution.

C.      Firestone had no notice of or means of ascertaining whether, or if so in what amount, it might be subject to a penalty for the conduct alleged by Plaintiffs in this case.  That lack of notice was compounded by the absence of any adequate or meaningful standards as to the kind of conduct that might subject Firestone to punitive damages or as to the potential amount of such an award.  This violates the due process clause of the Fifth and Fourteenth Amendments of the United States Constitution, as well as Article I, section 19 of the Texas Constitution.

D.      The Texas punitive damages scheme fails to adequately inform the fact finder as to reasonable limits on the award, consistent with the purposes of punitive damages.  This violates the due process clause of the Fourteenth Amendment of the United States Constitution and Article I, Section 19 of the Texas Constitution.

E.      The Texas punitive damages scheme allows the imposition of different penalties for the same or similar conduct and permits arbitrary awards and discrimination against a defendant on

35

various grounds, including (but not limited to) its residence and its status, particularly, (but not limited to) its corporate status. This violates the equal protection clause of the Fourteenth Amendment of the United States Constitution, and Article I, Section 3 of the Texas Constitution.

F. The procedures pursuant to which punitive damages are awarded in this case permit the imposition of punitive damages in excess of the maximum criminal fine for the same or similar conduct. This violates the due process clause of the Fifth and Fourteenth Amendments and the equal protection clause of the Fourteenth Amendment of the United States Constitution, as well as Article I, Sections 13 and 19 of the Texas Constitution.

G. The Texas punitive damage scheme imposes no limit on the number of times Firestone could be held accountable for punitive damages based on the same alleged conduct. *See Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 54 (Tex. 1998) (holding evidence about other paid punitive damages awards for the same course of conduct is relevant and admissible for the fact finder to consider when Defendant offers such evidence in the mitigation of punitive damages). This permits the imposition of excessive fines, in violation of the Eighth Amendment of the United States Constitution and in violation of Article I, Section 13 of the Texas Constitution. It also violates the due process clause of the Fifth and Fourteenth Amendments of the United States Constitution and Article I, section 19 of the Texas Constitution.

H. The award of punitive damages to Plaintiffs in this action would deprive Firestone of property without due process of law. This violates the due process clause of the Fifth and Fourteenth Amendments of the United States Constitution and Article I, section 19 of the Texas Constitution.

I. Texas and federal punitive damages procedures do not provide adequate procedural safeguards for imposing punitive damages award and do not provide adequate, objective post-trial

or appellate review such awards. This violates the due process clause of the Fifth and Fourteenth Amendments of the United State Constitution and Article I, section 19 of the Texas Constitution.

J.      The Texas punitive damage scheme does not provide adequate procedural safeguards consistent with the criteria set forth in *BMW of North America, Inc. v. Gore*, 517 U.S. 559 (1996); *Pacific Mutual Life Insurance Company v. Haslip*, 499 U.S.1 (1990), and *Matthews v. Eldridge*, 424 U.S. 319 (1976).

K.      Insofar that a punitive award under Texas law is based on conduct in other states, the award violates the following provisions, among others:  (a) Defendant's rights to due process and due course of law under the Fifth and Fourteenth Amendments of the United States Constitution and Article I, section 19 of the Texas Constitution; (b) the dormant or negative commerce clause derived from Article I, section 8, clause 3 of the United States Constitution; (c)  the Full Faith and Credit Clause of Article IV, section 1 of the United States Constitution; (d) the requirement of the United States Constitution that a state respect the autonomy of the other states within their spheres; and (e) the prohibition against excessive fines in Article 1, section 13 of the Texas Constitution.

L.      The Texas punitive damages scheme -- and in particular Chapter 41 of the Texas Civil Practice and Remedies Code -- violates the above-listed provisions of the United States and Texas Constitutions because, among other reasons, it allows for jury instructions, post-trial and appellate review, and other procedures which place undue emphasis on a defendant's wealth as a basis for making and enhancing a punitive damage award, and that permit an award to be based on a desire to redistribute wealth.

M.      The net effect of Texas' punitive damage system is to impose punitive damages in an arbitrary and discriminatory manner. The lack of adequate guidelines or review and undue emphasis on a defendant's wealth inevitably lead to varying results without any rational basis for

37

differentiation, and without serving any legitimate governmental purpose or interest. This violates the federal and state (U.S. Const. Amend 14; Texas Const. Art. 1, §3) equal protection guarantees. In sum, because the Texas punitive damage system focuses on the depth of the defendant's pockets, it promotes invidious discrimination.

Firestone requests that this Court conduct a de novo review of the constitutionality of Plaintiffs' punitive damages claim. *See Cooper Indus. v. Leatherman Tool Group, Inc.*, 121 S.Ct. 1678, 1683 (2001). Also, the constitutionality of any award of punitive damages is subject to de novo review by this Court and on appeal. *See id.*

### F.  No Evidence to Support Punitive Damages.

There is no legally sufficient evidence for an award of punitive damages, as Plaintiffs' punitive damages claim is barred because the subject tire complied with Federal Motor Vehicle Safety Standard 109. Firestone' Trial Brief Regarding Plaintiffs' Punitive Damage Claim is incorporated by reference, as if set forth fully herein.

Moreover, there is no legally sufficient evidence to support a claim for punitive damages because "exemplary damages may be awarded only if the claimant proves by clear and convincing evidence that *the harm with respect to which the claimant seeks recovery* of exemplary damages *results from* fraud, malice, or willful act or omission or gross neglect." TEX. CIV. PRAC. & REM. CODE § 41.003 (emphasis added). Further, the "harm with respect to which the claimant seeks recovery" of punitive damages must be a cognizable, legal harm – or cause of action – under Texas law. *See Continental Coffee Prod. Co. v. Cazarez*, 937 S.W.2d 444, 453 (Tex. 1996) ("The type of malice necessary to support punitive damages varies with the nature of *the wrongful act at issue* in any given category or particular type of case." (emphasis added)); *see also Green Tree Financial Corp. v. Garcia*, 988 S.W.2d 776, 787 (Tex. App.—San Antonio 1999, no pet.) (stating that "the jury

could only award punitive damages if it based the award on a wrongful act that was undertaken with malice and caused harm to" plaintiff); *Huynh v. R. Warehousing & Port Serv., Inc.*, 973 S.W.2d 375, 378 (Tex. App.—Tyler 1998, no writ) ("liability for gross negligence is based upon the underlying action for negligence"); *First American Title Inc. Co. of Texas v. Willard*, 949 S.W.2d 342, 351 (Tex. App.—Tyler 1997, writ denied) (to authorize a finding of exemplary damages, "[t]he act which constitutes the cause of action . . . must be actuated by and accompanied with" the relevant punitive scienter). As the Texas Supreme Court held in *Continental Coffee*,

> We recognize that an employer's violation of section 451.001 is an unlawful and wrongful act. Yet, in most types of cases, the fact that an act is unlawful is not of itself ground for an award of exemplary or punitive damages. *The act complained of not only must be unlawful* but also must partake of a wanton and malicious nature, or as sometimes stated, somewhat of a criminal or wanton nature, and an act will not be deemed malicious, and so warranting punitive damages, merely because it is unlawful or wrongful.
>
> * * *
>
> *Every tort involves conduct that the law considers wrong*, but punitive damages are proper only in the most exceptional cases.

*Continental Coffee*, 937 S.W.2d at 454 (emphasis added).

Under longstanding Texas law, the question whether a product is dangerous or defective – and hence whether the manufacturer will incur liability – is determined at the time the product leaves the manufacturer's hands and enters the stream of commerce. *See Turner v. General Motors Corp.*, 584 S.W.2d 844, 848 (Tex. 1979); *see also General Motors Corp. v. Saenz*, 873 S.W.2d 353, 356 (Tex. 1993) (the "determination of whether a duty to warn exists is made as of the time the product leaves the manufacturer."). Moreover, there is no duty "to take remedial measures to prevent harm caused by . . . products after [they] were placed in the stream of commerce." *See American Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 438 (Tex. 1997).

Here, all of Plaintiffs' causes of action require a determination of whether Firestone committed a "tort" or an "unlawful or wrongful act" based on the condition of the tire **at the time of sale**. Plaintiffs presented no evidence, or alternatively legally insufficient evidence, that any conduct on the part of Firestone on or before the date that Plaintiffs' Wilderness AT tire was placed by Firestone into the stream of commerce was committed with malice as defined in § 41.001(6). Any evidence regarding post-sale conduct or events is not – and cannot be – relevant to Plaintiffs' punitive damages claim, and therefore, any such evidence, to the extent it exists, cannot support a finding of malice. Consequently, Plaintiffs claim for punitive damages fails as a matter of law.

**X.      The Evidence Conclusively Establishes that Ford's Conduct and/or the Ford Explorer in Question Is the Proximate or Producing Cause of Plaintiffs' Alleged Injuries.**

> **A.      The Evidence Conclusively Establishes that a Design Defect in the Ford Explorer is the Producing Cause of Plaintiffs' Alleged Injuries.**

A "design defect" means that the foreseeable risks of harm posed by the product could have been reduced or avoided by the adoption of a safer alternative design, and the omission of the safer alternative design renders the product not reasonably safe. RESTATEMENT (THIRD) OF TORTS, § 2(b) and cmt. d; *Hernandez v. Tokai Corp.*, 2 S.W.3d 251 (Tex. 1999) (responding to certified question from Fifth Circuit). "Safer alternative design" means a product design other than the one actually used that in reasonable probability (1) would have prevented or significantly reduced the risk of the injury in question without introducing into the product other dangers of equal or greater magnitude; and (2) was economically and technologically feasible at the time the product left the control of Firestone by the application of existing or reasonably achievable scientific knowledge. RESTATEMENT (THIRD) OF TORTS, § 2(b) and cmt. f; *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 82.005 ("safer alternative design . . . than the one actually used that in reasonable probability . . . would have prevented or significantly reduced the risk of the claimant's personal injury . . . and was

40

economically and technologically feasible at the time the product left the control of the manufacturer or seller by the application of existing or reasonably achievable scientific knowledge").

The evidence conclusively establishes that there was a design defect in the 1998 Ford Explorer in question at the time it left the possession of Ford that was a producing cause of the injuries in question.

This is true because, among other reasons and without limitation, Firestone established that the Ford Explorer in question was "unreasonably dangerous as designed, taking into consideration the utility of the product and the risk involved in its use." *American Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 432 (Tex. 1997). While Texas courts, relying on the Restatement (Third) of Torts, make clear that "a product need not be designed to reduce or avoid *unforeseeable* risks of harm," *see, e.g.*, *Hernandez*, 2 S.W.3d at 257; *Martinez*, 977 S.W.2d at 335 (emphasis added), the evidence conclusively established – establishes as a matter of law – that the risks of harm of the Ford Explorer at issue were foreseeable to Ford and that these foreseeable risks of the Ford Explorer at issue outweighed its benefits. Moreover, the evidence conclusively establishes that the Ford Explorer at issue is unreasonably dangerous. *See Borel v. Fibreboard Paper Products Corp.*, 493 F.2d 1076, 1087 (5th Cir. 1973) (noting that, under the Restatement (Second), a product is unreasonably dangerous if "on balance, the utility of the product does not outweigh the magnitude of the danger").

The evidence conclusively establishes that the foreseeable risks of harm posed by the product could have been reduced or avoided by the adoption of a safer alternative design. The evidence conclusively establishes that the omission of the safer alternative design renders the product not reasonably safe. The evidence conclusively establishes that that a product design existed other than the one actually used that in reasonable probability would have prevented or significantly reduced the risk of the injury in question without introducing into the product other dangers of equal or greater

41

CUsPDF – www.fineTax.com

magnitude. The evidence also conclusively establishes that a product design existed that was economically and technologically feasible at the time the product left the control of Ford by the application of existing or reasonably achievable scientific knowledge.

The evidence also conclusively establishes that the alleged design defect was a "producing cause" of Plaintiffs' alleged injuries. TEX. CIV. PRAC. & REM. CODE § 82.005(a)(2). Producing cause means "an efficient, exciting, contributing cause which, in a natural sequence, produced the injuries complained of." *Morton Int'l v. Gillespie*, 39 S.W.3d 651, 658 (Tex. App.–Texarkana 2001, pet denied). The evidence conclusively establishes that Plaintiffs' injuries resulted from any such defect, rather than as a result of other causes, including but not limited to (1) Firestone's alleged negligence, (2) alleged defects in the tire in question, (3) the negligence of the driver, Plaintiff Jorge Rodriguez, (4) Plaintiffs' failure to properly maintain the tires, or (5) an unavoidable accident.

**B.     The Evidence Conclusively Establishes that a Marketing Defect in the Ford Explorer is the Producing Cause of Plaintiffs' Alleged Injuries.**

The evidence conclusively establishes – establishes as a matter of law – that a marketing defect existed in the Ford Explorer in question at the time it left the possession of Ford that was a producing cause of the injury(s) in question. A "marketing defect" with respect to the product means the failure to give adequate warnings of the product's dangers that were known or by the application of reasonably developed human skill and foresight should have been known or failure to give adequate instructions to avoid such dangers, which failure rendered the product unreasonably dangerous as marketed. RESTATEMENT (THIRD) OF TORTS, § 2(c). "Adequate" warnings and instructions mean warnings and instructions given in a form that could reasonably be expected to catch the attention of a reasonably prudent person in the circumstances of the product's use; and the content of the warnings and instructions must be comprehensible to the average user and must convey a fair indication of the nature and extent of the danger and how to avoid it to the mind of a reasonably

prudent person. *Id.* "An unreasonably dangerous" product is one that is dangerous to an extent beyond that which would be contemplated by the ordinary user of the product with the ordinary knowledge common to the community as to the product's characteristics. *Id.*

To prove a marketing defect, it must be established: (1) that there is the existence of a risk of harm that is inherent in the product or that may arise from the intended or reasonably anticipated use of the product; (2) that the product supplier knew or should have known of a risk of harm; (3) the absence of a warning or instruction rendered the product unreasonably dangerous to the ultimate user or consumer; and (4) the existence of a causal nexus between the failure to warn or instruct and his injury. *Jobe v. Penske Truck Leasing Corp.*, 882 S.W.2d 447, 450 (Tex. App.–Dallas 1994, no writ); *see also* RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY § 2(c); RESTATEMENT (SECOND) OF TORTS: PRODUCTS LIABILITY § 402A.

The evidence conclusively establishes that Ford failed to give adequate warnings of the product's dangers that were known or by the application of reasonably developed human skill and foresight should have been known or failure to give adequate instructions to avoid such dangers, which failure rendered the product unreasonably dangerous as marketed. This is true because, among other reasons and without limitation:

(a)   The evidence conclusively establishes that Ford could have foreseen that the inherently flawed and unstable Ford Explorer would result in a serious accident arising out of an otherwise minor inconvenience, the loss of tread.

(b)   The evidence conclusively establishes that an adequate warning or instruction would have added to the safety of the Ford Explorer.

(c)   The evidence conclusively establishes that the Ford Explorer presented an unreasonable risk of harm to Plaintiffs at the time it left Ford's control.

43

(d)     The evidence conclusively establishes an unreasonable risk associated with the Ford Explorer.

(e)     The evidence conclusively establishes that Ford's alleged failure to give a warning or instruction caused the accident in question.  Cause in fact requires proof that an act or omission was a substantial factor in bringing about injury which would not otherwise have occurred.  *Guzman v. Synthes (U.S.A.)*, 20 S.W.3d 717, 720 (Tex. App.–San Antonio 1999, pet. denied).  The evidence conclusively establishes that the adequacy of Ford's instructions or warnings, or lack thereof, substantially contributed to Plaintiffs' accident.

(f)     Unlike Firestone (see argument set forth above), Ford had a duty, after the Explorer left its control, to warn Plaintiffs of any defects or to recall its vehicles.  *See* 49 U.S.C. § 30118-30120 (Motor Vehicle Safety Act).  The evidence conclusively establishes that Ford was aware or eventually became aware of allegations that the Ford Explorer was defective and that such defects affected motor vehicle safety.  Because Ford has a statutory duty to warn of such defects, Ford owed a duty to these Plaintiffs to warn, instruct, or recall the vehicle at issue upon learning about the defects in the vehicle.

## C.     The Evidence Conclusively Establishes that Ford's Negligence Is the Proximate Cause of Plaintiffs' Alleged Injuries.

To establish a claim for negligence, it must be established that: (1) there is the existence of a duty, (2) breach of that duty (3) proximate causation, and (4) damages.  *See Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1991).  To establish breach, the evidence must show that Ford did something that an ordinarily prudent person exercising ordinary care would not have done under the circumstances, or that it failed to do something that an ordinarily prudent person would have done under the circumstances.  *See Lincoln Prop. Co. v. DeShazo*, 4 S.W.3d 55, 61 (Tex. App. – Fort Worth 1999, pet. denied).  The evidence conclusively establishes that (1) Ford owed Plaintiffs a duty (both at common law and pursuant to the Motor Vehicle Safety Act, § 30118-30120),

CSAPDF - www.tesisx.com

(2) Ford breached that duty, (3) Ford's breach of duty was the proximate cause of Plaintiffs' injuries, and (4) Ford's conduct was the proximate cause of Plaintiffs' damages.

**D.** **The Evidence Conclusively Establishes that Ford's Conduct Is the Producing and/or Proximate Cause of Plaintiffs' Actual Damages.**

In order to recover damages under Texas law, a plaintiff must prove a causal nexus between the defendant's conduct and the damages sought. *Haynes & Boone v. Bowser Bouldin, Ltd.*, 896 S.W.2d 179, 182-83 (Tex. 1995). In other words, the plaintiff must prove that the damages sought were the result of the defendant's conduct. *Id.* Without proof of legal causation, there can be no recovery of damages. *See id.*; *Doe v. Boys Club of Greater Dallas, Inc.*, 907 S.W.2d 472, 477-78 (Tex. 1995); *Union Pump Co. v. Allbritton*, 898 S.W.2d 773, 775-76 (Tex. 1995). Here, the evidence not only conclusively establishes that Ford's conduct caused Plaintiffs' injuries, the evidence also conclusively establishes that Ford's conduct, not Firestone's, proximately caused Plaintiffs' actual damages.

**E.** **The Evidence Conclusively Establishes that Ford's Conduct Is the "New and Independent Cause" of Plaintiffs' Injuries.**

"New and independent cause" means the act or omission of a separate and independent agency, not reasonably foreseeable, that destroys the causal connection, if any, between the act or omission inquired about and the injury in question and thereby becomes the immediate cause of such injury. The evidence conclusively establishes that the act or omission of Ford, which is a separate and independent agency, was not reasonably foreseeable to Firestone, and that such act or omission destroyed the causal connection, if any, between any alleged act or omission of Firestone, and thereby became the immediate cause of Plaintiffs' injuries.

**F.    The Evidence Conclusively Establishes Firestone's Right to a Set-off.**

Pursuant to TEX. CIV. PRAC. & REM. CODE §§ 33.012 and 33.014, the evidences conclusively establishes Firestone's right to set-off or settlement credit against any damages that Plaintiffs ultimately may recover from Firestone with respect to their cause(s) of action.

**XI.    Firestone Is Entitled to Judgment As a Matter of Law on All of Plaintiffs' Claims.**

There is no evidence and no legally sufficient evidence that Plaintiffs Exhibit 35 and 36 are the tire and tread that were on the Plaintiffs' Ford Explorer at the time of the accident on March 9, 2000 that is the subject of this lawsuit.

There is no evidence and no legally sufficient evidence that tread separated from the tire at issue prior to the accident in question.

**PRAYER**

For the foregoing reasons, Firestone prays that the Court grant judgment as a matter of law in its favor on all claims, and that the Court render a final take-nothing judgment for Firestone. Firestone prays for such other and further relief to which it may be entitled.

Respectfully Submitted,

VINSON & ELKINS L.L.P.

By: _____

Knox D. Nunnally
State Bar No. 15141000
2300 First City Tower
1001 Fannin Street
Houston, Texas 77002-6760
Telephone: (713) 758-2416
Facsimile: (713) 615-5220

HARTLINE, DACUS, DREYER &
    KERN, L.L.P.
Scott G. Edwards
State Bar No. 06461480

46

6688 North Central Expressway, Ste 1000
Dallas, Texas 75206
Telephone: (214) 369-2100
Facsimile: (214) 369-2118

HINOJOSA & POWELL
Juan J. "Chuy" Hinojosa
State Bar No. 09701400
612 Nolana #410
McAllen, TX 78504
Telephone: (956) 686-2413
Facsimile: (956) 686-8462

CANALES & SIMONSON, P.C.
J.A. "Tony" Canales
State Bar No. 03737000
2601 Morgan Avenue
Corpus Christi, TX 78465-5624
Telephone: (361) 883-0601
Facsimile: (361) 884-7023

## CERTIFICATE OF SERVICE

I hereby certify that on the **21st** day of August, 2001, a true and correct copy of the above and foregoing instrument was forwarded via hand delivery, facsimile, certified mail, return receipt requested, and/or Federal Express delivery to the following:

Ricardo A. Garcia
Law Office of Ricardo A. Garcia
820 South Main Street
McAllen, Texas 78501
956 630-2882
956 630-5393 (Fax)
*Attorneys for Plaintiffs and Attorney for Cross-Defendant*

Mikal Watts
Watts & Heard
555 N. Carancahua, Suite 1400
Corpus Christi, Texas 78478
(361) 887-0500
(361) 887-0055  (Fax)
*Attorneys for Plaintiffs*

Michael Guerra
Watts & Heard
6521 N. 10th, Suite C
McAllen, Texas 78501
(956) 683-1700
(956) 983-1703  (Fax)
*Attorneys for Plaintiffs*

Roberto Salazar
Attorney at Law
4601 N. McColl Road
McAllen, Texas  78504-2448



Austin 220792 1

48